UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRE WARD,

        Plaintiff,

    v.

DAN GOOSSEN, et al.,

        Defendants.

Case No. 14-cv-03510-TEH

**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Professional boxer Andre Ward ("Plaintiff") has brought a civil suit against Dan Goossen,[1] Ward's former promoter, and Goossen Tutor Promotions, LLC ("Defendants"). Compl. (Docket No. 1). Plaintiff seeks damages resulting from Defendants' alleged violation of the Muhammad Ali Boxing Reform Act, which, in relevant part, requires promoters to make certain financial disclosures to their boxers. Plaintiff also seeks an accounting of profits derived from several boxing matches. In the instant motion, Defendants ask the Court to compel the arbitration of Plaintiff's claims. August 29, 2014 Mot. (Docket No. 26). On September 12, 2014, Plaintiff filed his opposition (Docket No. 30), and the Court subsequently heard oral argument. After considering the parties' written and oral submissions, the Court now DENIES Defendants' motion to compel arbitration for the reasons set forth below.

**BACKGROUND**

Plaintiff and Defendants have been involved in a protracted dispute over Defendants' work promoting Plaintiff as a professional boxer. Previously, the parties have both litigated and arbitrated the validity of their 2004 and 2011 Promotional Agreements.

---

[1] On October 3, 2014, Plaintiff filed notice with the Court of Dan Goossen's death and Plaintiff's intention to file a motion to substitute Mr. Goossen's estate into the action in place of Mr. Goossen. (Docket No. 32). The Court has not yet received this motion.

To date, Plaintiff has not been successful in disputing the Agreements' validity. Plaintiff has now shifted his focus away from the issue of contractual validity, and is now suing Defendants in federal court for several alleged violations of the Muhammad Ali Boxing Reform Act. Specifically, Plaintiff claims that since 2004, Defendants have failed to provide certain required financial disclosures to Plaintiff in connection with fights they promoted on his behalf. Compl. ¶¶ 24-46. Plaintiff has also asserted a separate cause of action for an accounting. Compl. ¶¶ 47-51.

The business relationship between the parties is governed by a Contract composed of two documents: a Promotional Agreement and a mandatory Addendum, the latter of which is provided by the State Athletic Commission. In California, the State Athletic Commission ("Commission") has jurisdiction over the professional boxing industry. Cal. Bus. & Prof. Code §§ 18602, 18640. Pursuant to this authority, the Commission has promulgated a number of regulations, including a requirement that boxers and promoters execute a form contract entitled "Addendum to Promotional Contract," which must be attached to any promotional agreement between the boxer and promoter, and submitted to the Commission for final written approval. Cal. Code Regs., tit. 4, §§ 220-22, 230(b).

Plaintiff and Defendants entered into Promotional Agreements in 2004 and 2011. These Promotional Agreements attach and incorporate the Addendum required by the Commission. The 2011 Promotional Agreement provides:

> 17. <u>Forum Selection</u>
> Any controversies and/or disputes concerning and/or arising under this Agreement and/or arising under the Addendum shall be conducted in accordance with the California State Athletic Commission: Addendum to Promotional Contract, Sections C(1) and C(2) which is incorporated herein.

Ex. D to Goossen Decl. § 17 (Docket No. 26-2). The relevant provision of the 2011 Addendum provides:

> C. BOXER AND PROMOTER FURTHER AGREE:
> 1. That all contests or exhibitions of boxing which are conducted during the term of the promotional contract in the State of California shall in all respects be held in conformity with the laws of the State of California and the rules and

2

> regulations now or hereafter adopted, amended, or repealed by the commission. Said laws and rules are incorporated herein and made a part hereof by reference.
>
> 2. All controversies concerning the validity and/or enforceability of the promotional contract and this addendum shall be submitted for arbitration in the following manner: [A detailed procedure for arbitration follows.]

Ex. E to Goossen Decl. §§ C(1)-(2) (Docket No. 26-2). The 2004 Agreement and Addendum also contain these provisions. Finally, both the 2004 and 2011 Addenda provide, on their first page:

> Any and all inconsistencies or ambiguities between the promotional agreement and this addendum which is attached to it and made a part of it shall be resolved in favor of this addendum, the Boxing Act, and the commission's rules.

Because the contents of the 2004 and 2011 documents are so similar, they will hereinafter be referred to as the "Promotional Agreement" and "Addendum," or collectively, the "Contract."

The current controversy over the construction and scope of the arbitration provision results from the reference to, and incorporation of, sections C(1) and C(2) of the Addendum by the Promotional Agreement's Forum Selection provision. Specifically, the Promotional Agreement provides that disputes "concerning and/or arising under [the Contract] shall be conducted in accordance with" the Addendum, which itself requires, in relevant part: (1) that state law and Commission regulations apply to all boxing matches; and, more importantly, (2) that "[a]ll controversies concerning the validity and/or enforceability of the [Contract] shall be submitted for arbitration" according to a specified procedure.

As a result of the Contract's two-document composition, Plaintiff and Defendants present two competing constructions for the Contract's arbitration requirement. Defendants contend that the Forum Selection clause of the Promotional Agreement purposefully expands the Addendum's scope of arbitration from applying only to those disputes that concern the "validity and/or enforceability" of the Contract, to all disputes

3

"concerning and/or arising under" the Contract. As such, Defendants argue, Plaintiff's newest claims should be arbitrated because they fall under the broader range of disputes described in the Promotional Agreement.

Conversely, Plaintiff argues that the applicable arbitration requirement is the one provided in Addendum section C(2): "All controversies concerning the validity and/or enforceability" of the Contract. Under Plaintiff's narrow construction, the scope of arbitration provided by the Addendum is unchanged by the language in the Promotional Agreement, which instead merely clarifies the procedure for determining the appropriate forum and choice of law for disputes. Consequently, Plaintiff argues, litigating violations of the Ali Act in court would be conducting the matter "in accordance with" the Addendum's requirement that Contract validity/enforceability disputes be arbitrated. Opp'n at 8.

**LEGAL STANDARD**

Under the Federal Arbitration Act (FAA), a court must compel arbitration where: (1) A valid agreement to arbitrate exists; and (2) The dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Where parties have agreed to arbitrate, courts apply a presumption of arbitrability as to particular grievances, "and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 Fed.Appx. 740, 742 (9th Cir. 2012) (internal citations omitted). Courts should therefore "construe ambiguities concerning the scope of arbitrability in favor of arbitration . . . ." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66 (1995).

4

However, "[a]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal citations omitted). Consequently, a court should look first to whether the parties agreed to arbitrate the dispute, not to general policy goals. *Id.* at 294. Ultimately, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.*

**DISCUSSION**

The Court first applies California law governing contract formation to determine the appropriate construction of the arbitration provision for the parties' Contract. Next, the Court determines whether Plaintiff's claims are covered by this arbitration provision such that they must be arbitrated.

**A. The application of California law governing contract construction reveals a narrow arbitration provision.**

In order to decide whether parties agreed to arbitrate a particular set of disputes, courts apply state-law principles governing contract formation. *First Options of Chicago, Inc.* 514 U.S. at 944. In this case, Plaintiff's narrow interpretation of the applicable arbitration provision best adheres to California's state-law principles governing the construction of contracts.

Under California law, contract interpretation must construe the contract as a whole, being sure "to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930, 943 (N.D. Cal. 2011) (quoting Cal. Civ. Code § 1641) (internal quotation marks omitted). Importantly, "Courts must interpret contractual language in a manner that gives force and effect to every provision, and not in a way that renders some clauses nugatory, inoperative

5

1   or meaningless." *Id.*  When necessary, a court can look to the subsequent conduct of the
2   parties as evidence of their intent.  *Crestview Cemetery Assn. v. Dieden*, 54 Cal.2d 744,
3   754 (1960).  Finally, "In cases of uncertainty not removed by the preceding rules, the
4   language of a contract should be interpreted most strongly against the party who caused the
5   uncertainty to exist." Cal. Civ. Code § 1654.

### 1.  Plaintiff's interpretation is the only one that does not render any provision "nugatory, inoperative or meaningless."

Under Plaintiff's construction, a dispute "concerning and/or arising under [the Contract]," must be conducted "in accordance with [Addendum sections C(1) and C(2)]." Ex. D to Goossen Decl. § 17.  As provided in section C(1), the dispute would therefore be governed by state law and Commission regulations.  As provided in section C(2), if the dispute concerns "the validity and/or enforceability of the [Contract]," it must be arbitrated.  Under this construction, which relies solely upon the plain language of the Contract, nothing is added to or taken away from the Contract.  Accordingly, each provision of the Contract is given effect: the Promotional Agreement clarifies the application of the Addendum's choice of law and arbitration provisions to all Contract-related disputes.  Conversely, Defendants' proposal negates a substantial portion of Addendum section C(2) by allowing the Promotional Agreement's broader language to supersede the narrow language of section C(2).

Further, Defendants' interpretation also renders the Promotional Agreement's *reference to Addendum section C(1)* entirely meaningless.  Defendants claim that by viewing the Forum Selection clause as expanding Addendum section C(2), the Forum Selection clause is saved from being rendered superfluous; however, the Forum Selection provision refers to both C(1) **and** C(2).  Defendants' proposal, therefore, saves the reference to C(2) from being superfluous by arguing that it serves to expand the Addendum, but does nothing to give the reference to section C(1) any similar non-superfluous purpose.  When pressed on this issue at oral argument, Defendants failed to

6

provide any explanation for how their construction does not give meaning to the reference to section C(2) at the expense of rendering the reference to section C(1) meaningless. Conversely, Plaintiff offers a reasonable interpretation of the Forum Selection clause that renders the entire clause non-superfluous: the Forum Selection provision, a standard component of most contracts, clarifies the application of the Addendum to questions of forum selection by explicitly, rather than merely implicitly, incorporating the Addendum's choice of law and arbitration provisions.

Most importantly, however, Defendants' construction of the applicable arbitration provision contradicts the plain language of the Contract by negating the Addendum's express instruction that "[a]ny and all inconsistencies or ambiguities between the promotional agreement and this addendum . . . shall be resolved in favor of this addendum . . . ." Exs. B & E to Goossen Decl. at 1 (Docket No. 26-2). As a result, any ambiguity or inconsistency between the language of the Agreement's Forum Selection clause and Addendum section C(2) must be resolved in favor of the Addendum's provision that arbitration be required only for disputes "concerning the validity and/or enforceability of the [Contract]." Defendants dismiss this clause by arguing that there is no ambiguity or inconsistency, while also imploring that any ambiguity be resolved in favor of arbitration in accordance with the pro-arbitration policy created by the FAA. Reply at 2, 5-6 (Docket No. 31). The Court disagrees with Defendants' contention that there is no ambiguity, and does not believe that the pro-arbitration policy applies. According to *Pinel*, "[I]f an instrument is capable of two different reasonable interpretations, the instrument is ambiguous." 814 F. Supp. 2d at 943. Here, the parties present two different reasonable interpretations of the Contract's applicable arbitration clause. While the Court finds Plaintiff's interpretation to be far more reasonable than Defendants', it recognizes that the Contract presents an ambiguity on which reasonable minds can differ. However, where the Contract explicitly requires the resolution of all such ambiguities in favor of the Addendum, as it does here, reasonable minds can arrive at only one conclusion: that the Addendum's provision controls. Because arbitration is "a matter of consent and not

7

coercion," the Court must not, and will not, require the parties to arbitrate where they have not agreed to do so. *See Waffle House, Inc.*, 534 U.S. at 294 ("While ambiguities in the language of the agreement should be resolved in favor of arbitration . . . Arbitration under the [FAA] is a matter of consent, not coercion.") (internal quotation marks and citations omitted); *Volt Information Science Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("[W]e have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so . . . ."). Consequently, the inclusion of the Addendum's supremacy clause alone is sufficient to find that the Addendum's narrow arbitration provision controls.

**2. Defendants' interpretation is inconsistent with the parties' subsequent actions.**

After the filing of this suit, but before the current dispute over the scope of arbitration, Defendant Goossen filed a state court defamation suit against Plaintiff for allegedly defamatory comments regarding Defendants' noncompliance with the Ali Act. Surely, if Plaintiff's claims against Defendants for violations of the Ali Act are arbitrable as issues "concerning" the parties' Contract, as Defendants contend, then so too is Defendant Goossen's defamation claim, which will require him to prove that he did not violate the Ali Act. *See Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 944 (9th Cir. 2013) (falsity is a required element of a defamation suit). As a result, Defendant Goossen's conduct belies his argument in this motion.

Defendants attempt to rebut this point by saying the lawsuit is "manifestly irrelevant" because there was "no basis for Goossen to submit his claims against these defendants to arbitration" because two of the defendants in the defamation suit are not parties to the Promotional Agreement. Reply at 11. The Court does not find this explanation convincing. Defendant Goossen could have pursued his defamation claim against Plaintiff separately, by arbitrating the case as it applies to Plaintiff and litigating the case as it applies to the other defendants. The ultimate efficacy of such a course of action is irrelevant. Defendant Goossen's decision not to even pursue this approach

8

1 demonstrates that he does not feel contractually obligated to arbitrate all matters
2 concerning his professional relationship with Plaintiff, as he here contends.

### 3.  Because Defendants drafted the Promotional Agreement, any uncertainty resulting from the Agreement's language should be interpreted against them.

While the Court finds that the Addendum's supremacy clause resolves the question of arbitrability, even if it were unclear from the Promotional Agreement whether the parties intended the mandatory arbitration of disputes "concerning and/or arising under [the Contract]" or just disputes "concerning the validity and/or enforceability of the [Contract]," the Court should resolve this uncertainty against the party that drafted the Agreement.  *See* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.").  At oral argument, Defendants conceded that they were likely the drafters of the Promotional Agreement.

The rationale for interpreting uncertainties against the drafter is clear: If Defendants had intended for the Promotional Agreement's Forum Selection clause to expand the scope of the Addendum's arbitration clause, then they should have drafted the Contract to make this intent more explicit.  At the very least, Defendants could have specified that all disputes "concerning and/or arising under [the Contract]" must be conducted in accordance with Addendum section C(2)'s *arbitration procedure*.  They did not do this, however, and so should not now be allowed to benefit from the uncertainty they have created.

Only Plaintiff offers an explanation that avoids inconsistency between the Promotional Agreement and the Addendum, gives effect to all provisions, comports with the parties' subsequent conduct, and appeals to the Court's common sense: the Forum Selection clause of the Promotional Agreement explicitly, rather than merely implicitly, incorporates the Addendum's choice of law and arbitration provisions, nothing more.  Alternatively, where any inconsistencies or ambiguities between the Promotional Agreement and Addendum remain, the language of the Addendum prevails.

9

1    Consequently, the Addendum's narrow arbitration provision controls, and the parties are
2    only obligated to arbitrate disputes concerning the validity and/or enforceability of the
3    parties' Contract.

### B. Plaintiff's claims do not concern the validity and/or enforceability of the Contract.

Having identified the appropriate construction of the Contract's arbitration clause, the Court must now determine whether Plaintiff's claims fall within the scope of that clause. When making this determination, the Court must resolve any ambiguities in the language of the arbitration provision in favor of arbitrating Plaintiff's particular claims. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66 (1995) (Courts should "construe ambiguities concerning the scope of arbitrability in favor of arbitration . . . .").

Plaintiff's suit raises two causes of action. First, Plaintiff alleges that Defendants violated the Muhammad Ali Boxing Reform Act by failing to make certain required financial disclosures. Second, Plaintiff asserts a state-law claim mandating Defendants to provide an accounting for the profits received from a number of boxing matches. Neither of these two claims "concern[] the validity and/or enforceability of the [Contract]."

The term "concerning" is among the broadest words available in the context of an arbitration provision. *See Fairchild v. National Home Ins. Co.*, 17 F. App'x 631, 633 (9th Cir. 2001) (listing the broadest terms as "arising out of or related to," "regarding," "concerning," and "in connection with."). Nonetheless, the parties are only obligated to arbitrate those matters to which they have privately agreed to arbitrate. *Waffle House Inc.*, 534 U.S. at 294 (The FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements . . . ."). Even the most generous application of the phrase "concerning the validity and/or enforceability of the [Contract]" demands the Court find that violations of the Ali Act and a claim for accounting are entirely unrelated to questions regarding the Contract's *validity or enforceability*, contract disputes explicitly disclaimed

United States District Court
Northern District of California

by Plaintiff. Opp'n at 1. Further, Defendants' motion does nothing to dispute this conclusion.

Because this Court has determined that only disputes concerning the validity and/or enforceability of the Contract must be arbitrated, and that Plaintiff's claims do not concern questions of contractual validity or enforceability, it does not need to address the other arguments raised by the parties' submissions.

**CONCLUSION**

An application of California contract law to the plain text of the parties' Contract strongly favors the finding of a narrow arbitration provision that applies only to disputes involving the validity and/or enforceability of the Contract. Despite the state and federal policy favoring arbitration, parties are not required to arbitrate matters to which they have not contractually agreed to arbitrate. Put another way, the pro-arbitration presumption does not mandate the Court to ignore a Contract's plain language in crafting a broader arbitration clause than the one actually provided. Ultimately, because the Addendum's supremacy clause expressly requires that ambiguities or inconsistencies between the Promotional Agreement and Addendum be resolved in favor of the Addendum, upon finding that Plaintiff and Defendants each offer a reasonable interpretation of the Contract's arbitration provision, this Court resolves that ambiguity in favor of the Addendum. Accordingly, only disputes concerning the validity and/or enforceability of the Contract must be arbitrated, and the Court therefore DENIES Defendants' motion to compel arbitration.

**IT IS SO ORDERED.**

Dated: 10/15/14                    _____
                                   THELTON E. HENDERSON
                                   United States District Judge