UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRE WARD,

    Plaintiff,

v.

ESTATE OF GOOSSEN, et al.,

    Defendants.

Case No. 14-cv-03510-TEH

**ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING APPEAL**

Currently before the Court is Defendants' motion to stay these proceedings pending an appeal of the Court's Order denying Defendants' motion to compel arbitration ("Arbitration Order"). Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument. After carefully considering the parties' submissions and the relevant case law, the Court hereby GRANTS Defendants' motion, for the reasons set forth below.

**BACKGROUND**

Professional boxer Andre Ward ("Plaintiff") has brought a civil suit against the Estate of Dan Goossen and Goossen Tutor Promotions, LLC ("Defendants"). Compl. (Docket No. 1). Plaintiff seeks damages resulting from Defendants' alleged violation of the Muhammad Ali Boxing Reform Act, which, in relevant part, requires promoters to make certain financial disclosures to their boxers. Plaintiff also seeks an accounting of profits derived from several boxing matches.

On October 15, 2014, the Court denied Defendants' motion to compel arbitration, finding that the Parties' Contract, composed of a Promotional Agreement and attached Addendum, did not require the arbitration of claims unrelated to the validity and/or enforceability of the Contract. Oct. 15, 2014 Arbitration Order (Docket No. 34). Defendants' subsequently appealed the Court's decision, and filed a motion to stay the

proceedings pending that appeal. Oct. 31, 2014 Mot. (Docket No. 40). Plaintiff filed his opposition on November 14. (Docket No. 45). During a telephonic case management conference held on November 17, the Court instructed the parties to submit supplemental briefs on the matter, with special attention paid to the question of irreparable harm. (Docket No. 46). These supplemental briefs were timely submitted to the Court and are considered, along with the parties' initial submissions, below. (Docket Nos. 47, 49, 51).

**LEGAL STANDARD**

A district court's order denying a motion to compel arbitration does not result in an automatic stay of the proceedings pending the appeal. *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). Instead, the Federal Arbitration Act ("FAA") allows a district court to evaluate the merits of the moving party's claim, and to grant or deny a stay as a matter of discretion, based upon the particular facts of the case. *Id.* Accordingly, the party requesting the stay bears the burden of showing that the case's circumstances justify an exercise of the court's discretion in granting a stay. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

To determine whether the moving party has met its burden, the Ninth Circuit adheres to a four-factor test: (1) whether the party has made a strong showing it is likely to succeed on the merits; (2) whether the party will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public's interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see Steiner v. Apple Computer, Inc.*, No. 07-4486, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008) (applying the *Hilton* factors to determine whether to stay litigation pending appeal from an order denying a motion to compel arbitration). In weighing these factors, courts apply a "sliding scale," whereby the elements of the test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011).

## DISCUSSION

### 1. Likelihood of Success or Substantial Legal Question

In the Ninth Circuit, "the minimum quantum of likely success necessary to justify a stay" can be articulated in several ways, including a "reasonable probability," a "fair prospect," raising "serious legal questions," or bringing a "substantial case on the merits." *Leiva-Perez*, 640 F.3d at 967 (quotation marks omitted). Consequently, "[t]o satisfy the first *Hilton* factor, a movant need not show a probability of success on appeal." *Eberle v. Smith*, No. 07-0120, 2008 WL 238450, at *2 (S.D. Cal. Jan. 29, 2008) (citing *C.B.S. Employees Fed. Credit Union v. Donaldson Lufkin & Jenrette Sec. Corp.*, 716 F. Supp. 307, 309-10 (W.D. Tenn. 1989) (explaining that it would be difficult for moving parties to persuade the trial court that its decision being appealed was wrong and would probably be reversed)). Courts alternatively articulate this lower standard as whether "serious legal issues" are raised on appeal or if the arbitration motion raises a "substantial question." *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998); *Britton*, 916 F.2d at 1412. Put another way, "district courts properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Protect Our Water v. Flowers*, 377 F.Supp.2d 882, 884 (E.D. Cal. 2004) (internal citations omitted).

Defendants argue that their appeal involves "substantial questions" that should be resolved by the appellate court. Mot. at 4-6. In particular, Defendants enumerate five such "substantial questions": (1) Whether the presumption of arbitrability applies to the interpretation of the Promotional Agreements; (2) Whether the Addendum's "supremacy clause" defeats the presumption of arbitrability; (3) Whether the Addendum's arbitration clause "may fairly be read to preclude" the arbitration of other issues; (4) Whether the Contract should be construed against Defendants under California Civil Code § 1654; and (5) Whether and to what extent the defamation action filed by Goossen, and now joined by the remaining Defendant, has any bearing on Defendants' Arbitration Motion. *Id.*

Regarding Defendants' first and second "substantial questions," the Court notes that Defendants substantially misconstrue, or at the very least misunderstand, the Court's expressed reasons for denying Defendants' motion to compel arbitration. The Court recognizes the legal rules that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). However, in arguing that the Court misapplied this rule, Defendants quote a sentence from the Court's Order entirely out of context. While the Court did state that "the parties present two different reasonable interpretations of the Contract's applicable arbitration clause," it did so within the context of explaining that the Contract's latent ambiguity was <u>resolved</u> by the plain language of the Contract <u>before</u> any presumption of arbitrability could be applied. Order at 7-8. This explanation is not by any means hidden within the Court's Order, as it immediately follows the very passage that Defendants quoted in the present Motion.

In the Arbitration Order, the Court cited *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002), which explained in no uncertain terms that a court should look <u>first</u> to whether the parties agreed to arbitrate the dispute <u>before</u> applying any general policy goals favoring arbitration. *Id.* at 294. The Supreme Court stated: "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* The Court applied these principles in determining that the Addendum's "supremacy clause" resolved any ambiguities in favor of the Addendum's limited arbitration provision, making the application of the general policy favoring arbitration moot in the absence of any persisting ambiguity.

However, the Court recognizes that, while contract interpretation is always a difficult endeavor, it is especially complicated here, as the parties' Contract is composed of two poorly-constructed documents, one of which was not even written or negotiated by the parties that it bound. Moreover, while there is plentiful case law regarding the state and

4

federal policies favoring arbitration, none of these cases address facts similar to the ones at hand. In nearly all of those cases, the "ambiguity in the scope of arbitration" referred to the language employed by a specific, singular, readily identifiable arbitration clause. Here, by contrast, the Court has been presented with two clauses: (1) a broad "Forum Selection" provision in the Promotional Agreement, which does not actually mention arbitration, but instead incorporates by reference (2) the two paragraphs of the Addendum that require arbitration in limited circumstances. Consequently, the Court was not tasked with deciding the appropriate definition of an arbitration provision's wording. Instead, the Court had to decide whether an ambiguity or inconsistency existed between two potentially applicable provisions, apply the Addendum's "supremacy clause" to resolve any such inconsistency or ambiguity in favor of the Addendum, and, most importantly, determine whether this resolution precluded the application of the federal policy favoring arbitration.

While the Court is confident in its ultimate determination, it nonetheless recognizes that these issues present substantial questions that bear on the proper application of the federal and state policies favoring arbitration. Other parties entering into contracts containing statutorily required addenda, parties seeking to form contractual agreements through the incorporation of multiple documents, and parties hoping to dispose of potential ambiguities through the inclusion of a "supremacy clause," will likely benefit from any clarity that might be provided by the Ninth Circuit upon appeal.

Having found that these issues constitute a substantial question, the Court does not need to address Defendants' remaining arguments, all of which address portions of the Arbitration Order that were secondary to the application of the Addendum's supremacy clause, and therefore merely provided additional support for the Court's conclusion.

**2. Irreparable Harm to Defendants**

After satisfying *Hilton*'s first factor, the moving party must show that they face irreparable harm unless the court issues a stay of the proceedings. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). In cases where the moving party raises only

1   "substantial questions" on appeal, as opposed to demonstrating a "likelihood of success on
2   the merits," the moving party must make an even stronger showing regarding the
3   probability of irreparable harm. *Steiner*, 2008 WL 1925197, at *5. Specifically, the
4   moving party must "demonstrate that the balance of hardships under the second and third
5   factors tilts sharply in its favor." *Zaborowski v. MHN Gov't Servs.*, No. 12-5109, 2013
6   WL 1832638, at *2 (N.D. Cal. May 1, 2013) (citing *Leiva-Perez*, 640 F.3d at 966, 970).
7   This analysis will "turn on the facts and circumstances of each case." *Steiner*, 2008 WL
8   1925197, at *5.

9   Because Defendants in this case rely upon the "substantial question" articulation of
10  the standard, they must make a strong showing of irreparable harm to justify the issuance
11  of a stay. *Id.* Further, the irreparable harm analysis must be "individualized" in nature.
12  *Id.* In Defendants' initial moving papers, they essentially argued that a stay should be
13  categorically granted where a party appeals the denial of a motion to compel arbitration.
14  *See* Mot. at 1-2, 7. Such a proposition is contrary to law. *Lair v. Bullock*, 697 F.3d 1200,
15  1214 (9th Cir. 2012) ("In analyzing whether there is a probability of irreparable injury, we
16  also focus on the individualized nature of irreparable harm and not whether it is
17  'categorically irreparable.'"). For this reason, the Court ordered the parties to provide
18  supplemental briefs on the issue of irreparable harm. (Docket No. 46). The Court now
19  finds that Defendants have met their burden in showing a probability of irreparable harm
20  absent a stay of these proceedings.

21  "Generally, monetary expenses incurred in litigation are not considered irreparable
22  harm. However, arbitration is unique in this aspect." *Zaborowski*, 2013 WL 1832638, at
23  *2 (citing *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984)).
24  "[I]f defendants are forced to incur the expense of litigation before their appeal is heard,
25  the appeal will be moot, and their right to appeal would be meaningless." *Gray v. Golden
26  Gate Nat'l Recreational Area*, No. 08-0722, 2011 WL 6934433, *3 (N.D. Cal. Dec. 29,
27  2011) (internal quotations omitted). While Plaintiff identifies cases where a district court
28  denied a stay upon finding that there was no probability of irreparable harm, Opp'n at 3,

6

1  Defendants correctly point out that "[t]hese cases share a common theme in that they focus
2  on a comparative analysis between the discovery procedures in the arbitration process at
3  issue and the discovery in the civil action." Defs.' Supplemental Brief at 3 (Docket No.
4  47). In other words, the cases cited by Plaintiff found a lack of irreparable harm where the
5  proposed arbitration included substantial discovery and motions practice such that
6  continuing to litigate in federal court would have resulted in little to no loss of time and
7  money. *See, e.g.*, *Guifu Li v. A Perfect Franchise, Inc.*, No. 10-1189, 2011 WL 2293221,
8  at *4 (N.D. Cal. June 8, 2011) (finding no irreparable harm where the defendants would
9  incur discovery costs "regardless of the outcome of [the stay] motion" because the
10 arbitration agreement allowed "adequate opportunity to conduct discovery."); *Morse v.
11 Servicemaster Global Holdings, Inc.*, No. 10-0628, 2013 WL 123610, at *4 (N.D. Cal. Jan.
12 8, 2013) (finding that defendants' litigation expenses pending appeal did not constitute
13 irreparable harm because "the parties would have experienced lesser but still <u>substantial</u>
14 burdens in the arbitration process defendants prefer.") (emphasis added); *R&L Ltd. Invs.
15 Inc. v. Cabot Inv. Props., LLC*, No. 09-1525, 2010 WL 3789401, at *2 (D. Ariz. Sept. 21,
16 2010) (stating that the parties' arbitration agreement called for a process of arbitration
17 "which require[d] the parties to engage in much of the same disclosure and document
18 exchanges as the Federal Rules of Civil Procedure"). Defendants have adequately
19 distinguished these cases.
20       Unlike in the cases cited by Plaintiff, the arbitration procedure proposed by
21 Defendants and outlined in Title 4 of the California Code of Regulations, section 227, is a
22 streamlined process. Importantly, there is no formal discovery, law and motion practice,
23 or other pre-trial hearings. *See* 4 CCR § 227. The party requesting arbitration submits a
24 written request for arbitration to the commission. *Id.* at (a). The request must specify
25 three dates of availability for arbitration within the next 90 days. *Id.* at (a)(7). Within five
26 days of receipt of the request, the commission must then serve the request and any
27 accompanying documents on the other party and provide that party with an opportunity to
28 respond. *Id.* at (b). Ten days prior to the hearing, the parties exchange a list of the

7

1    evidence they expect to present at the hearing, including a witness list.  *Id.* at (d).  Next,
2    the arbitration hearing may not exceed four hours, unless extended by the arbitrator, but in
3    any event may not exceed six total hours.  *Id.* at (e).  Finally, the arbitrator is required to
4    submit a written decision within 45 days of the matter's submission.  *Id.* at (g).
5    Accordingly, the maximum time between the submission of a request for arbitration and
6    the issuance of a written decision is 135 days.
7         The contrast, in time and expense, between the arbitration process as described by
8    Defendants and the process of litigation in federal court is substantial.  The Court cannot
9    rely upon the mere possibility that Defendants will nonetheless incur discovery expenses
10   as a result of the separate defamation action pending between the parties, as Plaintiff
11   contends in his initial opposition.  Opp'n at 4.  The Court will not speculate on the extent
12   of discovery needed in that case, and has been provided no information that would allow
13   the Court to determine whether the parties will reach the discovery phase in that matter
14   during the pendency of the appeal of this Court's Arbitration Order.  The Court therefore
15   agrees with Defendants that "if this matter is not stayed, and the Ninth Circuit reverses the
16   [Arbitration] Order, all litigation efforts expended in the interim will have been wasted,
17   and the speed, economy, and specialized nature of the arbitration procedure claimed to be
18   operative by Defendants will have been lost."  Defs.' Supplemental Brief at 4-5.
19        The Court finds no support for Plaintiff's suggestion that Defendants must
20   demonstrate that they face dire financial hardship, such as bankruptcy, in order to meet the
21   irreparable harm standard.  *See* Pl.'s Supplemental Resp. at 3.  As noted by Defendants,
22   courts have found a probability of irreparable harm in similar situations even where the
23   moving party had vast financial resources.  Defs.' Supplemental Reply at 4 (citing *Murphy*
24   *v. DirecTV, Inc.*, No. 07-6465, 2008 WL 8608808, at *3 (C.D. Cal. July 1, 2008) (holding
25   that litigation expenses pending appeal from denied motion to compel arbitration
26   constituted irreparable harm to DirecTV, Inc.); *Jones v. Deutsche Bank AG*, No. 04-5357,
27   2007 WL 1456041, at *2 (N.D. Cal. May 17, 2007) (same as to Deutsch Bank AG); *Winig*

1  *v. Cingular Wireless LLC*, No. 06-4297, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6,
2  2006) (same as to Cingular Wireless, LLC)).
3      Accordingly, the Court finds that Defendants have made a strong showing of
4  irreparable harm should a stay not be issued in these proceedings.

### 3. Prejudice to the Plaintiff

    The third *Hilton* factor is "generally concerned with undue loss or destruction of evidence stemming from a delay." *Ontiveros v. Zamora*, No. 08-0567, 2013 WL 1785891, at *5 (E.D. Cal. Apr. 25, 2013). There is no reason to believe that evidence will be lost in this case should the Court issue a stay, and Plaintiff does not make an argument to this effect. Instead, Plaintiff contends that the issuance of a stay will cause him injury because it "would extend the period during which he lacks critical information for negotiation in the specialized marketplace for top-flight professional matches." Opp'n at 7. Consequently, Plaintiff argues that he would remain at a significant disadvantage in negotiating fights because he would be denied the financial disclosures to which he is entitled under the Muhammad Ali Act. *Id.*

    Plaintiff's argument lacks the necessary support to overcome the probability of irreparable harm facing Defendants should a stay be denied, as Plaintiff has not explained how or to what extent the absence of these disclosures disadvantages him in negotiation. *See Eberle*, 2008 WL 238450, at *3 ("When a defendant appeals an order refusing to compel arbitration, the general disadvantage to plaintiff caused by delay of proceedings is usually outweighed by the potential injury to defendant from proceeding in district court during pendency of appeal."). Further, Defendants are correct in pointing out that Plaintiff's argument assumes the merits of his case, and is therefore circular in logic. *See* Defs.' Supplemental Brief at 7. The Court has, at this early stage in the proceedings, no evidentiary basis to support the legal claims underlying Plaintiff's lawsuit, and is therefore hesitant to rely solely upon these bare allegations in denying Defendants' motion to stay.

1     Finally, even if the Court assumes the truth of Plaintiff's unproven allegations, any prejudice resulting from a delay in the proceedings will be minimal given the Ninth Circuit's briefing schedule in this case, which provides for the appeal to be fully briefed within the next few months. *See Murphy*, 2008 WL 8608808, at *3 n. 2 (noting that a delay pending appeal did not justify denial of motion to stay where the "Ninth Circuit has already issued a briefing schedule under which all briefing will be completed by the end of the year"). Conversely, Defendants would likely incur substantial discovery expenses in that same period of time should the case proceed in federal court.

    Accordingly, the Court finds that the balance of equities tips sharply in Defendants' favor, as Defendants' demonstrated probability of irreparable harm sufficiently outweighs any potential harm posed to Plaintiff by the Court's stay of the proceedings.

### 4. The Public Interest

    Finally, the Court finds that "[t]he policy underlying the FAA is to promote judicial efficiency and economy. Thus, contrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration." *Zaborowski*, 2013 WL 1832638, at *3. Additionally, "[t]he speed and efficiency of ADR are the foundation for a strong federal policy favoring arbitration over litigation, which would be contravened by requiring the parties to litigate while the appeal is pending." *Pokorny v. Quiztar, Inc.*, No. 07-0201, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008). While the Court recognizes Plaintiff's asserted public interest in "protecting professional boxers and preventing exploitative business practices," Opp'n at 8, this public interest is far more limited than the general public interest in promoting arbitration and preserving judicial resources. Accordingly, the Court finds that the public interest weighs in favor of granting a stay.

///
///
///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to stay these proceedings pending the appeal of the Court's October 15, 2014 Arbitration Order. The parties shall file a joint case management statement no later than fourteen days after the Ninth Circuit has issued its mandate on the pending appeal.

**IT IS SO ORDERED.**

Dated:   12/22/14                                        _____
                                                         THELTON E. HENDERSON
                                                         United States District Judge